IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:20-cv-00161-WCM

WANDA SUE PADGETT, )
 )
    Plaintiff, )
 )
v. ) MEMORANDUM OPINION
 ) AND ORDER
COMMISSIONER OF THE SOCIAL )
SECURITY ADMINISTRATION, )
 )
    Defendant. )
_____ )

This matter is before the Court on the parties' cross motions for summary judgment (Docs. 13, 15).[1]

## I. Procedural Background

In March of 2019, Plaintiff Wanda Sue Padgett ("Plaintiff") filed an application for supplemental security income, alleging disability beginning on February 15, 2019. Transcript of the Administrative Record ("AR") 290-295.

On June 11, 2020, following an administrative hearing at which Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued an unfavorable decision. AR 9-29. That decision is the Commissioner's final decision for purposes of this action.

---

[1] The parties have consented to the disposition of this case by a United States Magistrate Judge. Doc. 11.

1

## II. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of "degenerative disc disease, right carotid artery occlusion, hypertension, and obesity." AR 15. After determining that Plaintiff's impairments did not meet or medically equal one of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform light work . . . except: she can occasionally climb; have frequent but not constant exposure to workplace hazards, such as unprotected heights and dangerous machinery.

AR 18.

Applying this RFC, the ALJ found that Plaintiff had the ability to perform her past relevant work, as well as other jobs that exist in significant numbers in the national economy such that Plaintiff was not disabled during the relevant period. AR 22-24.

## III. Plaintiff's Allegations of Error

Plaintiff contends that the ALJ's development of her RFC is not supported by substantial evidence, and that the ALJ failed to evaluate her statements regarding her symptoms properly.

## IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental

2

impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

## V. Discussion

### A. Plaintiff's Mental Impairments

The ALJ determined that Plaintiff's "medically determinable mental impairments of depression, a personality disorder, and a history of substance abuse" did not cause "more than minimal limitation in the claimant's ability to perform basic mental work activities" and therefore were "nonsevere." AR 15-16.

In making that determination, the ALJ was "generally persuaded" by the opinions of the state agency psychological consultants, Dr. Arne Newman (AR 124-126) and Dr. Mark Dilger (AR 139-140). AR 16. These consultants found that Plaintiff had no limitations in the four broad areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. Dr. Newman and Dr. Dilger issued their opinions on April 23, 2019 and June 24, 2019, respectively.

In contrast, the ALJ was "not persuaded" by the opinions of Nancy Capel, a licensed clinical social worker. AR 17. Ms. Capel stated in a November 25, 2019 letter that Plaintiff had difficulty getting along with customers, supervisors, and other staff. AR 695. Also, in a January 24, 2020 Mental Health Medical Source Statement, Ms. Capel indicated that Plaintiff had "moderate" limitations in understanding, remembering, or applying information, as well

4

as in interacting with others, and "marked" limitations in concentrating, persisting, or maintaining pace, as well as in adapting or managing herself. AR 719.

Plaintiff argues that the ALJ erred in relying on the state agency psychological consultants' opinions because these consultants did not evaluate the entire administrative record and did not examine Plaintiff.

The undersigned does not find these arguments to be persuasive.

First, non-examining state agency consultants "are highly qualified ... physicians and psychologists who are experts in the evaluation of medical issues in disability claims...." SSR 96-6p, 1996 WL 374180, at * 2 (July 2, 1996).

Second, although Dr. Newman and Dr. Dilger issued their opinions prior to the submission of Ms. Capel's opinions and later treatment records, state agency consultants are not required to review the entire record before rendering their opinions. See Hunter v. Saul, No. 1:19CV912, 2020 WL 6582497 at *9 (M.D.N.C. Nov. 10, 2020) ("State agency consultants provide RFC assessments at the initial and reconsideration levels of the claims process and thus necessarily offer their opinions prior to completion of the record").

More problematic, though, is the ALJ's discussion of evidence that post-dated the state agency consultants' opinions.

An ALJ may rely on the opinions of state agency consultants when those opinions are consistent with the evidence, including evidence that post-dates

the opinions. See Tanner v. Commissioner of Social Security, 602 Fed. Appx. 95, 101 (4th Cir. 2015) (unpubl.) ("'the testimony of a nonexamining physician can be relied upon when it is consistent with the record'") (quoting Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)); see also Hunter, 2020 WL 6582497 at *9 ("the consistency of state agency consultants' opinions with the record as a whole, including those records post-dating such opinions, constitutes the proper focus of the inquiry") (emphasis in original); Thacker v. Astrue, No. 3:11CV246, 2011 WL 7154218, at *6 (W.D.N.C. Nov. 28, 2011) ("The fact that the state agency physician did not have access to the entire evidentiary record — because the record was incomplete at the time of the assessment — is inconsequential as … there is nothing in the additional medical evidence subsequently submitted by Plaintiff to indicate that she possessed limitations beyond [the state agency consultant's RFC]") (internal citation omitted), recommendation adopted, 2012 WL 380052 (W.D.N.C. Feb. 6, 2012); Bracey v. Astrue, No. 5:07CV265, 2009 WL 86572, at *3 (E.D.N.C. Jan. 6, 2009) (finding no error in ALJ's reliance on state agency consultants' opinions where "treatment notes and clinical findings … submitted after [their] assessments indicate[d] similar complaints and assessments as those [they] reviewed" and noting that the ALJ considered that additional evidence, which did "not demonstrate a marked change for the worse in [the] plaintiff's health").

In that regard here, the ALJ cited evidence that post-dated the opinions of Dr. Newman and Dr. Dilger, and that appears to be consistent with those opinions. See AR 16 (citing AR 644 (July 30, 2019 Gaston Family Health Services ("GFHS") record reflecting that Plaintiff was alert, with normal mood, affect, behavior, judgment, and thought content); AR 665 (November 12, 2019 GFHS record reflecting that Plaintiff was alert and displayed normal mood, affect, behavior, judgment, and thought content); AR 734 (February 9, 2020 Wake Forest Baptist Medical Center record reflecting that Plaintiff presented to the emergency department complaining of chest heaviness, and that on physical exam was alert with normal mood, affect, and behavior); AR 804 (February 25, 2020 GFHS record reflecting Plaintiff was alert and exhibited normal speech, behavior, judgment, thought content, cognition, and memory); AR 819 (March 3, 2020 GFHS mental status exam reflecting that Plaintiff was alert, fully oriented, and displayed appropriate judgment)).

However, some of the same records cited by the ALJ include information that appears to be inconsistent with the state agency psychological consultants' opinions. See AR 661 (November 12, 2019 GFHS record indicating Plaintiff reported bizarre, agitated, and ritualistic/stereotyped behavior as well as abnormal clothing/appearance and aggression); AR 810 (February 25, 2020 GFHS mental status exam reflecting Plaintiff appeared disheveled, fidgety, and depressed with tangential thought process and poor perception, insight,

7

Case 5:20-cv-00161-WCM   Document 17   Filed 02/01/22   Page 7 of 9

and judgment); AR 819 (March 3, 2020 GFHS mental status exam reflecting that Plaintiff was depressed and anxious, displayed an "inappropriately familiar" demeanor, "suicidal ideations and ruminations," and "circumstantial" thought process). Other than noting that Plaintiff had complained of manic episodes in November of 2019, the ALJ did not acknowledge this information.

Additionally, the ALJ did not discuss other potentially inconsistent mental health records post-dating the state agency consultants' review. See AR 789 (November 20, 2019 GFHS record reflecting that Plaintiff reported a depressed mood, anxiety, poor self-hygiene and self-esteem, distractibility, crying spells, lethargy, restlessness, and that while regular therapy was recommended, Plaintiff reported a "low likelihood of following through with the behavioral aspects of the treatment plan").

In the absence of additional explanation, it is not clear to what extent the ALJ considered this seemingly contrary information when endorsing the state agency consultants' opinions and discounting Ms. Capel's opinions.

### B. Plaintiff's Remaining Arguments

Plaintiff makes multiple other arguments with respect to the ALJ's development of her RFC, including that the ALJ used an incorrect regulatory framework, erred in her consideration of the state agency consultants' opinions regarding her physical limitations, and failed to consider the side effects of Plaintiff's medications adequately. Additionally, Plaintiff argues that the ALJ

erred in the consideration of Plaintiff's subjective complaints, and specifically contends that the ALJ "misstat[ed] and mischaracteriz[ed] material facts," including Plaintiff's need for a cane, attempts to obtain treatment, and ability to exercise or move furniture. See Doc. 14 at 15-19.

Considering the conclusion above, it is not necessary for the undersigned to reach Plaintiff's remaining arguments.

## VI. Conclusion

For the reasons stated above, Plaintiff's Motion for Summary Judgment (Doc. 13) is **GRANTED**, and the Commissioner's Motion for Summary Judgment (Doc. 15) is **DENIED**. The Commissioner's decision is hereby **REVERSED**, and this matter is **REMANDED** for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter a separate judgment of remand simultaneously herewith, thereby closing the case.

Signed: February 1, 2022

W. Carleton Metcalf
United States Magistrate Judge